Núm. 3.—PUEBLO, querellante, *v.* CENTRAL CAMBALACHE, querellada.—Original. ▇▇▇▇▇▇▇ Marzo 12, 1942.

(Por la Corte, a propuesta del Juez Asociado Sr. Travieso.)

Vista la sentencia por consentimiento sometida a la Corte en 6 de marzo de 1942 por los abogados de las partes en este procedimiento, la cual dice así:

### "SENTENCIA POR CONSENTIMIENTO

"El Pueblo de Puerto Rico radicó su petición en el caso de autos el día 19 de julio de 1937, y habiendo la demandada comparecido por abogado, El Pueblo de Puerto Rico, por el Procurador General y abogado asociado, ha pedido sentencia de la Corte, consintiendo la demandada el registro de esta sentencia sin oposición alguna.

"Por tanto, se ordena, falla y decreta de la manera siguiente, a saber:

"1. Que la Corte tiene jurisdicción en este procedimiento y sobre todas las partes y que la querella aduce una causa de acción contra le demandada a tenor de (1) la sección 3 de la Resolución Conjunta del Congreso de los Estados Unidos aprobada en 1 de mayo de 1900 (48 USCA 752); (2) bajo el artículo 4 de la ley relativa a corporaciones privadas aprobada por la Legislatura de Puerto Rico en 9 de marzo de 1911; y (3) bajo la Ley Núm. 47 aprobada por la Legislatura de Puerto Rico en 7 de agosto de 1935.

"2. Que la demandada Central Cambalache se desposeerá de todas las tierras de cultivo de que es dueña al presente, exceptuando la cantidad de 500 acres, vendiendo dichas tierras bajo los términos que abajo aparecen, junto con las plantaciones en las mismas, mejoras, equipo agrícola, sistema de regadío y demás bienes y derechos de propiedad que más adelante se enumeran, a la Autoridad de Tierras de Puerto Rico establecida por el artículo 2 de la Ley 26 aprobada por la Legislatura de Puerto Rico en 12 de abril de 1941. Toda dicha propiedad y todos dichos derechos de propiedad serán vendidos por Central Cambalache a la Autoridad de Tierras, según se ha dicho, libres de toda carga y gravamen.

"La Autoridad de Tierras bajo los poderes que le confiere la ley arriba mencionada pagará a Central Cambalache, de contado, el justo precio de las tierras, plantaciones, mejoras, equipo agrícola, sistema de regadío y demás bienes y derechos de propiedad, que aparecen del *Exhibit* A que se acompaña, a ser vendidos y traspasados a la Autoridad de Tierras por la demandada Central Cambalache, y el precio que habrá de pagar la primera a la segunda será fijado y determinado por la Autoridad de Tierras y Central Cambalache después del

debido avalúo; pero si la Autoridad de Tierras y la demandada Central Cambalache no llegasen a un acuerdo en cuanto al precio de compra, entonces, en tal evento, el precio de compra a ser pagado por la Autoridad de Tierras será fijado y determinado por dos tasadores, uno de los cuales será nombrado por la Autoridad de Tierras y el otro por la demandada Central Cambalache, y si estos tasadores no llegaren a un acuerdo, ellos deberán seleccionar a un tercer tasador y el laudo dé la mayoría de ellos en cuanto al precio justo de dichas propiedades y de dichos derechos de propiedad a ser traspasados por Central Cambalache a la Autoridad de Tierras será firme y obligatorio para las partes. El precio de compra así determinado será satisfecho de contado por la Autoridad de Tierras a la Central Cambalache con el traspaso del título.

"La Autoridad de Tierras tendrá el derecho de comprar todas las propiedades arriba mencionadas por el justo valor de las mismas, determinando como se deja dicho, dentro de un período que no excederá de un año a contar de la fecha de esta sentencia, o dentro de tal término adicional que las partes convinieren, durante el cual término las tierras no serán vendidas o gravadas por Central Cambalache a ninguna persona o entidad; disponiéndose, sin embargo, que durante dicho período de tiempo la demandada Central Cambalache podrá constituir gravámenes sobre sus cañas en pie y productos de las mismas con el fin de arbitrar y tomar a préstamo tales sumas de dinero que fueren de tiempo en tiempo necesarias al cultivo adecuado y a la explotación de las tierras y para el funcionamiento de la factoría azucarera, y para tales fines podrá dar como garantía colateral de tales préstamos los bonos hipotecarios o los pagarés hasta el presente librados por la demandada. Siendo entendido, sin embargo, que nada de lo aquí contenido relevará a la demandada Central Cambalache de la obligación contraída bajo los términos de esta sentencia de vender, libre y exenta de todo gravamen, toda la propiedad que ha de ser vendida a la Autoridad de Tierras mencionada según se provee en esta sentencia.

"Las cuotas bajo la Ley de Ajuste Agrícola pertenecientes a las tierras de labrantío de que es dueña y de que es arrendataria Central Cambalache, pasarán, hasta donde lo permitan los reglamentos de la A.A.A., a la Autoridad de Tierras, sus sucesores y cesionarios, con la excepción de una cuota por 2,000 toneladas de azúcar que será retenida por la Central Cambalache para beneficio de las tierras de labrantío retenidas por dicha Central según en la presente se provee.

"3. Que las plantaciones de caña que hubiere en las tierras a ser vendidas y traspasadas por Central Cambalache a la Autoridad de Tierras, al tiempo de su traspaso, serán compradas por la Autoridad de Tierras por el justo precio, determinado como se ha dicho; o, a opción de la Autoridad de Tierras, la Autoridad de Tierras podrá permitir a Central Cambalache que coseche la plantación en pie, en el cual caso la cuantía a ser pagada por la caña que hubiere en las tierras será determinada en la fecha en que la cosecha haya terminado.

"4. Que la demandada Central Cambalache se desposeerá, dentro del año posterior al traspaso de títulos a la Autoridad de Tierras de las propiedades arriba mencionadas, de todas las tierras que al presente controla por arrendamiento.

"5. La demandada Central Cambalache, como corporación, tendrá el derecho, desde esta fecha a la fecha en que la Autoridad de Tierras compre las pro-

piedades arriba mencionadas, de continuar operando y administrando su factoría azucarera y emprender cualquier actividad agrícola que estime adecuada y conveniente en relación con toda la tierra afectada en la causa de autos, y al actuar así no estará sujeta a otras restricciones y limitaciones que no fuesen las especificadas en esta sentencia.

''Que la demandada Central Cambalache, después de disponer y desposeerse de las propiedades arriba referidas, se limitará en sus operaciones a la molienda de caña de azúcar y a la fabricación y venta de azúcar y derivados de la misma y a otros fines industriales, y se abstendrá de toda actividad agrícola en el futuro excepto la que le sea permitida por la ley.

6. Que al tiempo de la venta a la Autoridad de Tierras de las propiedades arriba referidas, la demandada Central Cambalache tendrá el derecho a seleccionar y retener de entre las tierras que en la actualidad posee, una parcela o parcelas que no excedan de 500 acres, en las cuales podrá dedicarse a fines agrícolas; disponiéndose, sin embargo, que ninguna de dichas parcelas tendrá un área menor de 100 acres. Central Cambalache tendrá también el derecho a retener y conservar para sí la cuantía de tierras que ahora ocupa y posee en y para el manejo de su factoría azucarera, ferrocarril, dependencias y accesorios.

''7. No obstante la venta de las propiedades arriba mencionadas a la Autoridad de Tierras, la demandada Central Cambalache tendrá derecho a continuar operando y manteniendo como hasta el presente su ferrocarril, sistema telefónico, líneas de trasmisión eléctricas, sistema de agua para fines industriales y servidumbres para el tránsito de camiones a través y sobre las tierras a ser vendidas a la Autoridad de Tierras, y tendrá además derecho al uso y disfrute, a perpetuidad, de tales derechos de paso y servidumbres que sean necesarios en relación con aquéllas y como sea convenido por ambas Central Cambalache y Autoridad de Tierras de Puerto Rico.

''8. Si la Autoridad de Tierras, por cualquier razón, dejare de comprar las propiedades arriba mencionadas dentro del término de un año a contar de la fecha de esta sentencia, o de aquella prórroga o prórrogas que las partes puedan convenir, todas las obligaciones bajo esta sentencia cesarán y terminarán, y todas las partes en este procedimiento se reintegrarán al estado en que se hallaban antes del registro de esta sentencia, y este procedimiento proseguirá tal cual si esta sentencia nunca hubiese sido registrada sin perjuicio para ninguna de las partes.

''9. Que la Autoridad de Tierras quedará obligada a imponerse a sí misma y a todos los futuros dueños o arrendatarios de dichas tierras la obligación y el deber de moler todas las cañas de azúcar sembradas y cultivadas en las mismas en la factoría de la demandada, de sus sucesores y cesionarios, y la demandada Central Cambalache, sus sucesores y cesionarios, quedarán obligados a moler tales cañas; siendo entendido, sin embargo, que nada de lo aquí contenido se interpretará en sentido de imponer a la Autoridad de Tierras, o a los futuros dueños o arrendatarios de la tierra, la obligación de entregar para ser molidas cañas a base improductiva o confiscatoria o de imponer a Central Cambalache, a sus sucesores o cesionarios, la obligación de moler cañas sobre bases improductivas o confiscatorias. Es entendido además que nada de lo aquí contenido será interpretado en sentido de obligar a la Autoridad de Tierras, sus sucesores o cesionarios a sembrar caña en las tierras que se vendan a tenor de la presente, o de obligar a Central Cambalache, sus sucesores y cesionarios a continuar en el negocio de fabricar azúcar.

"Nada de lo aquí contenido se entenderá que implica que la Autoridad de Tierras, sus sucesores o cesionarios no puedan concertar la molienda de cualquier porción de las cañas sembradas en las tierras referidas en otra central siempre que se hagan arreglos con la demandada, Central Cambalache, mediante los cuales una cantidad igual de caña de extraña procedencia se supla a la Central Cambalache para ser molida bajo términos en cuanto a arrastre y otras condiciones que no serán más gravosos para Central Cambalache que los existentes relativos a la caña así transferida a tal otra central. La disposición de este párrafo no será interpretada en sentido de impedir que la Autoridad de Tierras o cualquier otra agencia gubernativa requiera de la demandada Central Cambalache el cumplimiento de cualquier ley válida futura respecto a zonas, y en tal caso la Autoridad de Tierras, sus compradores o arrendatarios, no estarán obligados a moler en Central Cambalache las cañas sembradas en tierras que sean asignadas a otra Central de acuerdo con tal ley de zonas, y en tal caso la Autoridad de tierras, o sus compradores o arrendatarios, no serán responsables a Central Cambalache por ningún daño sufrido por razón de no moler la caña sembrada en tierras asignadas a otras centrales a tenor de la mencionada ley sobre zonas de molienda.

"10. La nota de *lis pendens* ahora pendiente contra las tierras de la demandada en el Registro de la Propiedad así como el auto de *injunction* expedido por esta Corte prohibiéndoles a los directores de la demandada disponer de las tierras de la misma, serán *ipso facto* cancelada y disuelto, respectivamente, siempre y cuando la demandada venda y disponga de sus tierras de la manera indicada.

"11. La demandada no pagará multa, costas ni honorarios de abogado.

"12. Que la jurisdicción sobre esta causa será retenida por esta Corte al objeto de decretar tales otras y ulteriores órdenes que fueren necesarias.

"El Pueblo de Puerto Rico consiente el registro de esta sentencia hoy, día 6 de marzo de 1942.

> "George A. Malcolm,
> "Procurador General.
> "Miguel Guerra-Mondragón,
> "Asesor Especial.

"La demandada consiente el registro de esta sentencia hoy, día 6 de marzo de 1942.

> "Jaime Sifre, Jr.,
> "Earle T. Fiddler,
> "Francisco M. Susoni, Jr.
> "Abogados de la demandada."

POR CUANTO, la sentencia por consentimiento arriba transcrita ha merecido y merece nuestra aprobación,

POR TANTO, la Corte falla y decreta hacer suya dicha sentencia por consentimiento en todos sus particulares.